# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-321-JDR-MTS

EDWARD JOHN VANWOUDENBERG,

*Petitioner*,

*versus*

MICHAEL MILLER, *Warden*,[1]

*Respondent*.

## OPINION AND ORDER

Petitioner Edward John Vanwoudenberg, an Oklahoma prisoner, seeks federal habeas relief through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Dkt. 1. He claims he is detained in violation of federal law under the criminal judgment entered against him in Tulsa County District Court Case No. CF-2014-722. Respondent Michael Miller opposes the petition.

Having considered the petition[2] [Dkt. 1], the response and supplemental response [Dkts. 5, 15]; the reply and supplemental reply [Dkts. 11, 18];

---

[1] Mr. Vanwoudenberg is housed at the Allen Gamble Correctional Center ) in Holdenville, Oklahoma. Dkt. 21. The Court therefore substitutes the AGCC's warden, Michael Miller, in place of David Louthan as party Respondent. Fed. R. Civ. P. 25(d); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

[2] Mr. Vanwoudenberg began this habeas action without counsel. The court later appointed counsel to assist him with the reply and supplemental reply. Dkts. 9, 11, 18. The Court liberally construes the petition but does not afford that same liberal construction to the briefs filed by counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

No. 23-cv-321

the record of state court proceedings [Dkts. 5-1 through 5-29 and 6-1 through 6-12], and applicable law, the Court denies the petition.

I

In 2016, a Tulsa County jury found Mr. Vanwoudenberg guilty of first-degree murder, after former conviction of a felony, for fatally stabbing Robert "Bennie" Sampson. Dkt. 5 at 6-8; Dkt. 5-1 at 1-6; Dkt. 6-8 at 93-94.[3] The jury recommended a sentence of life without the possibility of parole, and the trial court sentenced him accordingly. *Id.*; Dkt. 6-10 at 3. Mr. Vanwoudenberg appealed, asserting six claims, and the Oklahoma Court of Criminal Appeals affirmed his judgment and sentence in August 2017. Dkts. 5-1, 5-2. Relevant here, the OCCA rejected Mr. Vanwoudenberg's claims that the trial court denied him his Sixth Amendment right to self-representation, abused its discretion by failing to instruct the jury that accomplice testimony must be corroborated by other evidence tending to connect the defendant with the commission of the crime, and plainly erred by admitting cumulative and overly prejudicial photographs. Dkt. 5-1 at 6-11; Dkt. 5-2 at 12-21.

Mr. Vanwoudenberg then applied for postconviction relief, asserting that the State of Oklahoma violated his state and federal constitutional rights to due process when it prosecuted him for a murder he committed in Indian country because he is Indian, and that his trial counsel was ineffective for failing to challenge the State's unlawful exercise of criminal jurisdiction. Dkt. 5-6. In support of these claims, Mr. Vanwoudenberg alleged that he was a member of the Muscogee (Creek) Nation and that he committed murder on land then-recently recognized as "Indian Land" by the United States Court of Appeals for the Tenth Circuit. Dkt. 5-6 at 3-4 (citing, in part, *Murphy v. Royal*, 866 F.3d 1164, 1205 (10th Cir. Aug. 8, 2017), *amended and superseded on denial of reh'g en banc* 875 F.3d 896 (10th Cir. Nov. 9, 2017), *aff'd sub nom. Sharp v. Murphy*, 591 U.S. 977 (2020). In *Murphy*, the Tenth Circuit held that the

_____

[3] The Court's citations refer to the CM/ECF header pagination.

2

No. 23-cv-321

Muscogee (Creek) Nation Reservation in Oklahoma is Indian country, as defined by 18 U.S.C. § 1151, for purposes of the Major Crimes Act , 18 U.S.C. § 1153(a).[4] *Murphy*, 875 F.3d at 937-38, 966. Because the law regarding Oklahoma's exercise of criminal jurisdiction in Indian country was unsettled, Mr. Vanwoudenberg's state postconviction proceeding was prolonged and convoluted. *See* Dkt. 5 at 2-4 (detailing procedural history).

While Mr. Vanwoudenberg's application for postconviction relief was pending, the United States Supreme Court held that Congress never disestablished the Muscogee (Creek) Nation Reservation and clarified that "the MCA applies to Oklahoma according to its usual terms: Only the federal government, not the State, may prosecute Indians for major crimes committed in Indian country." *McGirt v. Oklahoma*, 591 U.S. 894, 932-33 (2020).[5] Citing *McGirt*, the Supreme Court affirmed the Tenth Circuit's decision in *Murphy*. *Sharp v. Murphy*, 591 U.S. 977 (2020). Following *McGirt*, the OCCA issued several decisions where it (1) concluded that other reservations in Oklahoma have not been disestablished, and (2) held that state law permitted defendants to raise Indian country jurisdiction claims in applications for postconviction relief even if the defendants' convictions were final before *McGirt* was decided. *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 & n.3. (Okla. Crim. App. 2021).

---

[4] The MCA provides that "[a]ny Indian who commits" certain enumerated offenses, including murder, "within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the [enumerated] offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a).

[5] Because "[t]he term 'Indian' is 'not defined in [18 U.S.C. § 1152] or in related statutes addressing criminal jurisdiction in Indian Country,'" the Tenth Circuit "ha[s] adopted a two-part evidentiary test to determine whether a person is an Indian for the purposes of federal law." *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (first alteration in original) (quoting *United States v. Prentiss*, 273 F.3d 1277, 1279 (10th Cir. 2001)). Under this test, a factfinder must determine whether the person (1) has "some Indian blood" and (2) is "recognized as an Indian by a tribe or by the federal government." *Prentiss*, 273 F.3d at 1280.

No. 23-cv-321

In March 2021, the state district court granted Mr. Vanwoudenberg's application for postconviction relief, vacated his criminal judgment, and dismissed his criminal case for lack of jurisdiction. Dkts. 5-16, 5-17. The state district court determined, based on stipulated facts, that Mr. Vanwoudenberg is Indian and that he committed his crime in Indian country; and, relying on *Bosse v. State*, 2021 OK CR 3, determined that "subject matter jurisdiction can never be waived or forfeited." Dkt. 5-17 at 2-5. The State did not seek a stay or file a postconviction appeal to challenge the order granting postconviction relief, vacating the judgment, and dismissing the case. Dkt. 5-21 at 30. Mr. Vanwoudenberg was released from state custody on March 23, 2021. Dkt. 11 at 2.[6]

In August 2021, the OCCA held in *Wallace* "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing [that several reservations had not been disestablished] shall not apply retroactively to void a conviction that was final when *McGirt* was decided" and that "[a]ny statements, holdings, or suggestions to the contrary in [the OCCA's] previous cases are hereby over-ruled." *Wallace*, 497 P.3d at 689. Two months later, the OCCA withdrew its decision in *Bosse*, the decision the state district court had relied on to grant Mr. Vanwoudenberg postconviction relief. Dkt. 11 at 2; *see Bosse v. State*, 499 P.3d 771 (Okla. Crim. App. 2021).

Relying on *Wallace* and within a week of the OCCA's withdrawal of the *Bosse* decision, the State moved the state district court to vacate the March 2021 order granting postconviction relief. Dkt. 5-19. Following a hearing, the state district court granted the State's motion but announced it would

---

[6] The Court takes judicial notice of its own records showing that the United States charged Mr. Vanwoudenberg in federal court with first-degree murder in Indian country, two days before his release from state custody, in *United States v. Van Woudenberg*, No. 21-cr-164-GKF-1. While the exact timing is less than clear, it appears Mr. Vanwoudenberg was taken into federal custody by the United States Marshals Service following his release from state custody.

No. 23-cv-321

stay its ruling so Mr. Vanwoudenberg could seek review in the OCCA. Dkt. 5 at 4; Dkt. 5-21 at 19. The state district court subsequently entered a written order acknowledging that "the State missed normal procedural time limits for appeal," but relying on *Wallace* and the OCCA's "vacatur of *Bosse v. State*, 2021 OK CR 3" to conclude that its March 2021 order "was unauthorized by state law and [is] void." Dkt. 5-24 at 2 (hereafter "order of vacatur").

Mr. Vanwoudenberg sought review of the order of vacatur by filing in the OCCA an application to assume original jurisdiction and petition for writ of prohibition, or in the alternative, a petition for writ of mandamus ("writ application"). Dkt. 5-22; *see also* Dkt. 5-23 (brief in support of writ application). Mr. Vanwoudenberg asserted four claims. Dkt. 5-23. Relevant here, he claimed the order of vacatur violated his Fourteenth Amendment right to due process because it arbitrarily deprived him of a liberty interest obtained through the order granting postconviction relief. *Id.* at 5-16. The OCCA denied Mr. Vanwoudenberg's writ application in April 2023.[7] Dkt. 5-27.

He filed this petition in July 2023.

## II

Mr. Vanwoudenberg asserts four claims: (1) "the district court's order of vacatur re: the dismissal of [his] state conviction violates [his] Fourteenth Amendment due process rights", Dkt. 1 at 5; (2) "[r]ight to self-representation", *id.* at 7; (3) "[i]nstruction on accomplice corroboration was not issued", *id.* at 8; and (4) "prejudicial photos", *id* at 10.

Mr. Miller contends: (1) the Tenth Circuit's decision in *Graham v. White*, 101 F.4th 1199 (10th Cir. 2024) ("*Graham II*"), bars relief on claim one; (2) 28 U.S.C. § 2254(d) bars relief on claim two because the OCCA's

---

[7] After the OCCA denied Mr. Vanwoudenberg's writ application and affirmed the reinstatement of his state criminal judgment, this court granted the United States' motion to dismiss the federal case against Mr. Vanwoudenberg. Dkt. 56, *United States v. Van Woudenberg*, No. 21-cr-164-GKF-1.

No. 23-cv-321

adjudication of that claim is not contrary to federal law, based on an unreasonable application of federal law, or based on an unreasonable determination of the facts presented in state court; and (3) 28 U.S.C. § 2254(a) bars relief on claims three and four because both claims allege errors of state law, not cognizable federal habeas claims. Dkts. 5, 15.

## A

Mr. Vanwoudenberg first claims that the state district court's order of vacatur, later affirmed by the OCCA, violated his Fourteenth Amendment right to due process. Dkt. 1 at 5; *see also* Dkt. 5-23 at 15-16. In his counseled reply, Mr. Vanwoudenberg elaborates on this claim by asserting "he was denied his federal constitutional right to due process when the State of Oklahoma reincarcerated him after he was released on a final order vacating his judgment and sentence." Dkt. 11 at 3. He contends his "case is basically factually and procedurally the same" as another habeas action filed in this court, *Graham v. White*, No. 23-cv-164-CVE-SH, in which this court granted habeas relief on a Fourteenth Amendment due process claim. *Id.* at 3-4.

Mr. Vanwoudenberg presented his Fourteenth Amendment due process claim to the OCCA through his writ application, and the OCCA ostensibly rejected that claim.[8] Dkts. 5-23 at 15-16; Dkt. 5-27 at 2-4. The OCCA determined that state law provided the state district court authority to vacate its order granting postconviction relief despite the State's failure to timely

---

[8] Mr. Vanwoudenberg raised two federal claims in his writ application, an ex post facto claim and a Fourteenth Amendment due process claim. Dkt. 5-23 at 13-16. The OCCA did not expressly address either claim. Dkt. 5-27. But "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Although "that presumption can in some limited circumstances be rebutted," *Johnson*, 568 U.S. at 301, Mr. Vanwoudenberg has not argued, much less shown, that the presumption is rebutted here.

6

No. 23-cv-321

appeal. Applying its own prior decisions, including *Wallace*, the OCCA reasoned that the state district court retained jurisdiction to issue the order of vacatur because Mr. Vanwoudenberg's conviction was final before *McGirt*, the grant of postconviction relief and dismissal of his case was "unauthorized under Oklahoma law," and Oklahoma law permits "prompt correction" of an "erroneous judicial release . . . of a prisoner" "even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by the State." Dkt. 5-27 at 3-4. In addition to *Wallace*, the OCCA relied on principles drawn from *Application of Anderson*, 803 P.2d 1160 (Okla. Crim. App. 1990), *Harris v. District Court of Oklahoma County*, 750 P.2d 1129 (Okla. Crim. App. 1988), and *Ex parte Eley*, 130 P. 821 (Okla. Crim. App. 1913). *Id.* The OCCA further reasoned that the order of vacatur was necessary to correct the unauthorized dismissal of Mr. Vanwoudenberg's case "given the misdirection [the OCCA's] original decision in *Bosse* gave to both the District Court and the parties." *Id.* at 4. The OCCA thus concluded that Mr. Vanwoudenberg "fail[ed] to show the District Court's reinstatement of his conviction constituted an exercise of judicial power that is unauthorized by law." *Id.*

When, as here, a state appellate court has rejected a federal claim on the merits, a habeas petitioner must show, as a precondition to federal habeas relief, that the state appellate court's adjudication of that claim either (1) "resulted in a decision that was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1);[9] (2) "involved an unreasonable application of, clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). These standards are difficult to satisfy.

---

[9] As used in § 2254(d)(1), "clearly established Federal law" refers only to Supreme Court holdings. *Howes v. Fields*, 565 U.S. 499, 505 (2012).

No. 23-cv-321

First, a state court decision is "contrary to . . . clearly established Federal law" only "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (alterations added) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Second, "a state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014) (alteration added). But "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* at 427 (quoting *Richter*, 562 U.S. at 103). Third, a state court decision is not based on an unreasonable determination of the facts presented in the state court proceeding "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, "a factual finding may be unreasonable under § 2254(d)(2) only if the state court 'plainly misapprehended or misstated the record' and the 'misapprehension goes to a material factual issue that is central to the petitioner's claim.'" *Frederick v. Quick*, 79 F.4th 1090, 1104 (10th Cir. 2023) (quoting *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022)).

Mr. Vanwoudenberg attempts to satisfy § 2254(d)'s demanding standards by relying heavily, if not exclusively, on the federal district court decision in *Graham v. White*, 678 F. Supp. 3d 1332 (N.D. Okla. 2023) ("*Graham I*"). Dkts. 11, 18. In *Graham I*, the court granted habeas relief to a petitioner who, like Mr. Vanwoudenberg, obtained state postconviction relief based on the reasoning in *McGirt* through a state district court order that became final when the State did not appeal and who, later, was returned to state custody

8

No. 23-cv-321

after the state district court granted the State's motion to vacate the final post-conviction order based on the reasoning in *Wallace*. *Graham I*, 678 F. Supp. 3d at 1335-45. And like the petitioner in *Graham I*, Mr. Vanwoudenberg asserts that the reinstatement of his previously vacated judgment under those circumstances deprived him of his Fourteenth Amendment right to due process. *See id.* at 1345-48. But the respondent in *Graham I* sought review of the court's decision granting habeas relief, and the Tenth Circuit reversed that decision and remanded that case with directions to deny habeas relief. *Graham II*, 101 F.4th at 1202, 1210. The Tenth Circuit reasoned:

> The resulting constitutional issue is whether the state appeals court acted arbitrarily under Oklahoma law in allowing the state district court to modify the initial order after the State's appeal time had expired. [The petitioner] suggests this application of state law was arbitrary. The [OCCA] might or might not have been right in upholding the state district court's power to reinstate the convictions. But at least some fair-minded jurists could reasonably credit the state appeals court's application of *Harris* and *Application of Anderson*. So the state appeals court had leeway to reject [the petitioner's] characterization of its approach as *arbitrary*. Given that leeway, "fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Graham II*, 101 F.4th at 1209-10 (first three alterations added) (emphasis in original).

Just as habeas relief was not warranted for the petitioner in *Graham I*, habeas relief is not warranted for Mr. Vanwoudenberg because "at least some fair-minded jurists could reasonably credit" the OCCA's application of its own prior decisions to conclude that the state district court retained jurisdiction to vacate the order granting Mr. Vanwoudenberg's application for post-conviction relief despite the State's failure to timely appeal that order and that the state district court therefore did not violate Mr. Vanwoudenberg's

No. 23-cv-321

right to due process by issuing the order of vacatur and reinstating his judgment *See id.* at 1210.[10]

Because *Graham II* forecloses relief on Mr. Woudenberg's Fourteenth Amendment due process claim, the Court denies the Petition on claim one.

### B

Next, Mr. Vanwoudenberg claims he was denied his "right to self-representation." Dkt. 1 at 7. He contends "[a] defendant is allowed to self-representation even though he does not present this right in open court. Defendant filed a motion to represent himself." *Id.* Mr. Vanwoudenberg's counseled briefs do not further elaborate on this claim. Dkts. 11, 18. Like Mr. Miller, the Court liberally construes this claim as reasserting the claim Mr. Vanwoudenberg presented to the OCCA on direct appeal. Dkt. 5 at 37.

At the OCCA, Mr. Vanwoudenberg alleged a violation of his Sixth Amendment right to self-representation as interpreted in *Faretta v. California*, 422 U.S. 806 (1975). Dkt. 5-2 at 12-15. *Faretta* held that the Sixth Amendment's explicit provision of a right to counsel, made applicable to the states through the Fourteenth Amendment, impliedly provides that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." 422 U.S. at 807. "A defendant seeking to represent himself must (1) 'clearly and unequivocally' inform the court; (2) do so 'timely and not for the purpose of delay'; (3) assure the court that he is waiving the right to counsel 'knowingly and intelligently'; and (4) be 'able and willing to abide by rules of procedure and courtroom protocol.'" *United States v. Piette*, 45 F.4th 1142, 1164 (10th Cir. 2022) (quoting *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017)); *see*

---

[10] This Court provided both parties an opportunity to file supplemental briefs after the Tenth Circuit issued its decision in *Graham II*. Dkt. 14. In response to Mr. Miller's persuasive argument that *Graham II* precludes relief, Mr. Vanwoudenberg opted to "stand on all prior arguments and authorities" he relied on in his Petition and Reply. Dkt. 18.

No. 23-cv-321

*also Faretta*, 422 U.S. at 835-36 (noting that the defendant "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," that the trial court informed the defendant he must "play with the same ground rules that anybody plays," that a defendant choosing self-representation must "knowingly and intelligently" waive right to counsel, and that a defendant "should be made aware of the dangers and disadvantages of self-representation").

The OCCA rejected Mr. Vanwoudenberg's *Faretta* claim, stating:

> Appellant argues in Proposition One that he was denied his Sixth Amendment right to self-representation. He points to a written, pro se motion he filed on April 24, 2015, entitled "Motion of Defendant to Proceed Pro Se in District Court in Above Mention [sic] Case." Appellant cites no portion of the record where he verbally asserted the right to represent himself, and the trial court apparently took no action to resolve Appellant's written request prior to, or during the jury trial.

> Appellant appeared in court on August 18, 2015, when the court rescheduled his jury trial. Appellant failed to express his desire to represent himself then, or in a conversation with the court just before trial concerning his rejection of a plea bargain offer. Nevertheless, appellate counsel argues that Appellant was denied an opportunity to properly assert his right to self-representation, resulting in reversible error.

> The Sixth and Fourteenth Amendments to the Constitution guarantee the criminal defendant's right to self-representation at trial. *Mathis v. State*, 2012 OK CR 1, ¶ 7, 271 P.3d 67, 71-72; *Faretta v. California*, 422 U.S. 806, 818-21, 95 S. Ct. 2525, 2532-34, 45 L. Ed. 2d 562 (1975). However, "[a] defendant . . . must be *clear and unequivocal* in his desire to proceed pro se." *Mathis*, 2012 OK CR1, ¶ 7, 271 P.3d at 72 (emphasis added); *Felts v. State*, 1978 OK CR 132, ¶ 10, 588 P.2d 572, 576 (quoting *United States v. Bennett*, 539 F.2d 45, 50 (10th Cir. 1976)).

> Appellant has not shown a clear and unequivocal request to represent himself. His written *pro se* motion alone, absent a

11

No. 23-cv-321

timely verbal request for self-representation or any definitive attempt to reject the assistance of appointed counsel, was an equivocal request that he seemingly abandoned before trial. The court's omission to take further action on Appellant's written motion to proceed *pro se* did not result in constitutional error. Proposition One is therefore denied.

Dkt. 5-1 at 6-7.

Mr. Miller contends, and the Court agrees, that § 2254(d) bars Mr. Vanwoudenberg's *Faretta* claim. As discussed above, § 2254(d) requires Mr. Vanwoudenberg to show that the OCCA's decision on this claim either "is contrary to" a Supreme Court holding, is based on an unreasonable application of a Supreme Court holding, or is based on an unreasonable determination of the facts presented in state court. 28 U.S.C. § 2254(d). Mr. Vanwoudenberg has not presented coherent arguments to suggest that he can make any of these showings. And for three reasons, the Court finds that he has not made any of these showings. First, because the OCCA "correctly identified the principles announced in [*Faretta*] as those governing the analysis of [his] claim," he has not shown that the OCCA's decision is contrary to clearly established federal law. *Bell v. Cone*, 535 U.S. 685, 698 (2002). Second, he does not provide support in the record for a finding that the OCCA unreasonably determined the facts relevant to the *Faretta* claim. Having reviewed relevant portions of the record of state court proceedings, the Court finds that Mr. Miller's undisputed summary of those facts accurately describes the record as it was presented to the OCCA. *See* Dkt. 5 at 38-40. This record wholly supports the OCCA's key factual determination that Mr. Vanwoudenberg made no clear and unequivocal request to represent himself at trial. Dkt. 5-1 at 6-7. Third, the OCCA applied *Faretta*'s governing legal principles to the facts of this case in an objectively reasonable manner by concluding that, absent a clear and unequivocal request to proceed without counsel, Mr. Vanwoudenberg did not establish a Sixth Amendment violation. *Id.*; *see Faretta*, 422 U.S. at 835-36; *Piette*, 45 F.4th at 1164.

12

No. 23-cv-321

Because Mr. Vanwoudenberg has not satisfied § 2254(d)'s preconditions to habeas relief on the *Faretta* claim, the Court denies claim two in the petition .

C

Next, Mr. Vanwoudenberg claims that an "[i]nstruction on accomplice corroboration was not issued" and a "[d]efendant has a right to have accomplice instruction read to the jury." Dkt. 1 at 8. His counseled briefs do not further develop this claim. Dkts. 11, 18. The Court liberally construes claim three as reasserting the jury instruction claim he presented to the OCCA on direct appeal. There, Mr. Vanwoudenberg relied on state law to argue that the trial court abused its discretion when it refused his request to instruct the jury that accomplice testimony must be corroborated by other evidence tending to show that the defendant committed the crime. Dkt. 5-2 at 15-18.

"Under Oklahoma law, a conviction cannot rest upon the testimony of an accomplice unless the accomplice's testimony is corroborated by other evidence that tends to connect the defendant with the commission of the offense." *Postelle v. State*, 267 P.3d 114, 126 (Okla. Crim. App. 2011) (citing Okla. Stat. tit. 22, § 742). Applying state law, the OCCA found "[t]he trial court's denial of the requested instructions here was not clearly erroneous under the facts presented." Dkt. 5-1 at 7-8. The OCCA reasoned that the alleged accomplice was, at most, an accessory after the fact and that state law did not compel the trial court to give the instruction. *Id.* at 8-9. Alternatively, the OCCA reasoned that even if the trial court erred by refusing to instruct the jury on accomplice corroboration, that error was harmless because "the record contains independent evidence that Appellant confessed the murder to a jail inmate who clearly was not an accomplice, and then threatened to kill that inmate to conceal his involvement in the crime." *Id.* at 9. Under these facts, the OCCA reasoned that the alleged accomplice's testimony was

No. 23-cv-321

sufficiently corroborated to "render[] harmless any potential error in the denial of accomplice corroboration instructions." *Id.*

As Mr. Miller contends, Mr. Vanwoudenberg's appellate brief, the OCCA's decision, and Mr. Vanwoudenberg's Petition each demonstrate that claim three alleges a potential error of state law. Dkt. 5 at 43-46. This is fatal to his request for habeas relief. Critically, a federal court may grant habeas relief to a petitioner in custody under a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). And while erroneous jury instructions, in some circumstances, "may violate due process," a habeas petitioner "cannot transform a state law claim into a federal one merely by attaching a due process label." *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017); *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997) ("Errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."). Instead, to state a cognizable federal habeas claim, a petitioner "should 'include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle [him] to relief.'" *Leatherwood*, 861 F.3d at 1043 (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

Mr. Vanwoudenberg did not suggest in state court and does not suggest here that the trial court's alleged jury instruction error deprived him of his Fourteenth Amendment right to due process. Moreover, while Oklahoma law clearly requires corroboration of accomplice testimony, federal law just as clearly does not. *See Caminetti v. United States*, 242 U.S. 470, 495 (1917) (rejecting an alleged jury instruction error, suggesting "that it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to such evidence" but explaining that "there is no absolute rule of

14

No. 23-cv-321

law preventing convictions on the testimony of accomplices if juries believe them"); *Watson v. Howard*, No. 04-6074, 2005 WL 375940, at *6 (10th Cir. Feb. 17, 2005) (unpublished)[11] (noting that "[f]ederal law does not require independent corroboration of accomplice testimony"); *United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005) ("A conviction may stand merely on the uncorroborated testimony of an accomplice."); *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) (stating that "[t]he Constitution does not prohibit convictions based primarily on accomplice testimony" and citing cases from other circuits for the proposition that state laws requiring independent corroboration of accomplice testimony "do not implicate constitutional concerns that can be addressed on habeas review").

Because Mr. Vanwoudenberg's claim regarding the omission of the accomplice jury instruction, as presented to the OCCA and as reasserted here, alleges only an error of state law and does not state a cognizable federal due process claim, the Court denies claim three in the petition .

D

Mr. Vanwoudenberg's fourth and final claim asserts that the trial court wrongly admitted "prejudicial photos" that "didn't support" the charged crime and "only enhance[d] the horror of the crime." Dkt. 1 at 10. His counseled briefs offer no further argument on this claim. Dkts. 11, 18. The Court liberally construes claim four as reasserting the claim Mr. Vanwoudenberg presented on direct appeal to challenge the trial court's admission of several photographs. There, relying on state law, he argued "[i]t was entirely unnecessary and not relevant to admit all ten photographs of the decedent's body" and that even if "all ten photographs were relevant" the probative value of this evidence "was outweighed by the danger of unfair prejudice." Dkt. 5-2 at 19-21. He also asserted "[t]he accumulation of these photographs was

---

[11] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

No. 23-cv-321

highly prejudicial and deprived [him] of a fair trial." *Id.* at 19. In addition, he argued the error was "not harmless as it is likely the nature of these photographs contributed to [his] life without parole sentence." *Id.* at 21.

The OCCA noted that Mr. Vanwoudenberg did not object at trial to the admission of the challenged photographs and applied its plain error standard to evaluate the claim. Dkt. 5-1 at 10-11. The OCCA first considered "whether error, an actual violation of law, has plainly or obviously occurred" and found no error, reasoning:

> Some of the challenged photographs here depicted the victim's body as it was found in the crime scene, in a state of partial decomposition, which as relevant to the probable timing of the murders and corroborative of the testimony of the principle eyewitness. Four of the photographs show the victim's head partially wrapped in a plastic covering. The discoloration of flesh from decomposition is apparent in several photos, including close-up photographs of the discolored hands, showing apparent defensive cuts and dried blood. The most disturbing photo is the close-up of the victim's bloody face with obvious mold growing on its surface; yet, this photograph also shows apparent injuries to the victim's face which were relevant to the issues on trial. Despite the disturbing nature of these photographs, with some showing the unfortunate but inevitable effects of nature on the victim's body prior to its discovery, Appellant has not shown that their admission was plainly or obviously in error, or that any error unfairly affected [his] conviction or sentence.

*Id.* The OCCA then reasoned, in the alternative, that even if the trial court plainly erred by admitting the challenged photographs, relief would be available "only if [the error] seriously affected the fairness, integrity, or public reputation of the proceedings, or represented a miscarriage of justice." *Id.* at 11. The OCCA found no miscarriage of justice or detrimental effect to the proceeding, reasoning that the trial testimony "described a particularly brutal murder" and "that this evidence, rather than a handful of photographs

16

No. 23-cv-321

depicting the unpleasant but expected effects of a fatal stabbing and the hiding of a body for two weeks, explain the jury's verdict and sentence in this case." *Id.*

The Court agrees with Mr. Miller that § 2254(a) bars relief because claim four alleges a potential state law evidentiary error, not a cognizable federal habeas claim. Dkt. 5 at 46-48. The claim Mr. Vanwoudenberg presented to the OCCA on direct appeal—and the claim he appears to reassert here—is most reasonably understood as one that relies only on state law to challenge the admission of evidence. Dkt. 1 at 10; Dkt. 5-2 at 19-21. And as previously discussed, claims alleging state-law errors are not cognizable federal habeas claims. *Wilson*, 562 U.S. at 5; *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reemphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) ("Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights."). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Mr. Vanwoudenberg, however, did not say, either in state court or in his petition, that the admission of the challenged photographs resulted in a Fourteenth Amendment due process violation. In his state appellate brief, Mr. Vanwoudenberg relied on state law to challenge the admission of the allegedly prejudicial photographs. Then, in passing and without elaboration or mention of any federal constitutional right, he asserted that the admission of the photographs "deprived [him] of a fair trial." Dkt. 5-2 at 19. That was not sufficient to transform his state-law evidentiary claim into a federal due process claim. *See Leatherwood*, 861 F.3d at 1043.

But even assuming without deciding that a reasonable jurist could read Mr. Vanwoudenberg's mere mention of a "fair trial" as sufficient to raise a

due process claim, § 2254(d) would bar relief on claim four. In some circumstances, the admission of unduly prejudicial evidence can deprive a defendant of his Fourteenth Amendment right to due process. *See Andrew v. White*, 604 U.S. 86, 93 (2025) ("[T]he Due Process Clause of the Fourteenth Amendment provides a mechanism for relief against the introduction of evidence that is so unduly prejudicial that it renders the trial fundamentally unfair." (cleaned up)); *Leatherwood*, 861 F.3d at 1043 & n.8 (citing cases). However, by applying its plain error standard, the OCCA effectively adjudicated and rejected a claim that the trial court's admission of allegedly prejudicial photographs deprived Mr. Vanwoudenberg of his Fourteenth Amendment right to a fair trial. *See Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (concluding that when the OCCA applies plain error review, the OCCA applies "the same test [federal courts] apply to determine whether there has been a due process violation" so a federal court must review the claim under § 2244(d)(1) and "must defer to its ruling unless it 'unreasonably appli[ed]' that test"). The "federal due-process test" asks whether "error 'so infused the trial with unfairness as to deny due process of law.'" *Id.* (quoting *Estelle*, 502 U.S. at 75). Mr. Vanwoudenberg does not suggest that the OCCA unreasonably applied this test when the OCCA determined that the admission of the challenged photographs, considered in the context of all evidence presented at trial, did not result in a miscarriage of justice. And having reviewed the trial transcripts, the Court is convinced that the OCCA's application of the federal due-process test was objectively reasonable.

To the extent claim four alleges only an error of state law, § 2254(a) bars relief. And if claim four could be generously construed as alleging a Fourteenth Amendment due process claim, § 2254(d) bars relief because the OCCA reasonably applied the federal due process test to the facts of this case. The Court therefore denies claim four in the petition.

No. 23-cv-321

## III

IT IS ORDERED that the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Dkt. 1] is denied; a certificate of appealability is denied; and a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the substitution of Michael Miller, Warden, in place of David Louthan as party Respondent.

DATED this 29th day of June 2026.

JOHN D. RUSSELL
*United States District Judge*